**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LYNELL DAVON PIGFORD,** | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | CIVIL NO. 3:11-CV-598 |
| | : | |
| **CUMBERLAND COUNTY PRISON,** | : | (Judge Munley) |
| **ET AL.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM
### Background

Lynell Davon Pigford ("Plaintiff") initiated this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of Pennsylvania. Pigford's action regards his confinement at the Cumberland County Prison, Carlisle,[1] Pennsylvania. By Order dated March 18, 2011, the Eastern District of Pennsylvania granted Plaintiff's application seeking leave to proceed *in forma pauperis* as well as his request for a change of venue to this district court. For the reasons outlined herein, Pigford's action will be dismissed without prejudice.

Named as Defendants are the Cumberland County Prison and the following prison employees: Warden Earl F. Reitz, Jr.; Deputy Warden Jeff Ilgenfritz; Lieutenant Shannon Dunlap; Sergeant Mark Meluskey; and Corporal Ronald E. Wilson. Plaintiff states that he

---

[1] Since nail recently sent by this Court to Plaintiff at the Cumberland County Prison was returned as undeliverable, it appears that he may no longer be incarcerated at said facility. See Doc. 9.

entered the Cumberland County Prison on April 8, 2010. On or about June 15, 2010, Pigford asserts that he was reassigned to a different cell. Thereafter, Plaintiff allegedly became the target of harassment by correctional staff. Specifically, on July 20, 2010, Pigford was purportedly issued a falsified misconduct charge by a non-Defendant, Correctional Officer Keller. Approximately one (1) week later, Plaintiff claims that he was issued a second false misconduct by Corporal Wilson. A third falsified institutional disciplinary charge was filed against Plaintiff on July 29, 2010 by Nurse Tori Robertson (a non-Defendant). All three misconducts were approved by Lieutenant Dunlap.[2] According to the Complaint, Pigford was found not guilty of all three charges. During October 22, 2010, Plaintiff was issued a fourth alleged fabricated misconduct by Correctional Officer Uniatowski (a non-Defendant). Following an institutional disciplinary hearing, the Complaint indicates that the inmate was again found not guilty.

   Plaintiff next contends that on January 1, 2011, he was directed by Sergeant Meluskey to clean two cells in connection with his institutional work assignment as the unit janitor. Pigford maintains that he cleaned the cells as directed. However, on January 2, 2011 while awaiting a visit from his girlfriend, Defendant Wilson (after taking photographs of the two cells) handcuffed Plaintiff and improperly placed him in disciplinary confinement on administrative custody status. The Complaint indicates that Wilson was acting pursuant to a directive of Sergeant Meluskey. It is also alleged that Wilson lied to Plaintiff, by telling the inmate that his visitor had never come to the prison.[3]

---

   [2] Plaintiff additionally asserts that Defendant Dunlap encouraged prison staff to issue him misconducts for the purpose of retaliation.

   [3] Pigford alleges that his girlfriend went to the prison on January 2, 2011 and after waiting
(continued...)

The next day Plaintiff spoke to his attorney regarding his disciplinary placement. The following day, January 4, 2011, Plaintiff was released from disciplinary confinement by Lieutenant Shenk. When Sergeant Meluskey learned of Pigford's release, said Defendant allegedly became upset, issued Plaintiff a misconduct, and instructed other correctional officers to write false misconduct charges against the prisoner. Plaintiff notes that he was also found not guilty of Meluskey's misconduct.

Next, Plaintiff states that he filed an administrative grievance regarding his unlawful placement in disciplinary confinement. However, Warden Reitz and Deputy Warden Ilgenfritz refused to take any remedial action. Pigford's remaining contention is that Defendants Wilson and Dunlap "unlawfully read my legal documents" and "started harassing me" on January 26, 2011. Id. at p. 14. Plaintiff does not specify what relief he is seeking from the Court, rather his Complaint indicates only that he suffered mental and emotional distress due to Defendants' actions. See id. at p. 9.

**Discussion**

Based upon a review of the docket, service of the Complaint was not previously ordered by the Eastern District of Pennsylvania. When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not issue if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989), Douris v. Middleton Township, 293 Fed. Appx. 130, 132 (3d Cir. 2008). Indisputably meritless legal

---

[3](...continued)
an hour was informed that she would not be able to visit Plaintiff.

theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

It is additionally noted that the Complaint describes Plaintiff as awaiting trial, he may have been a pre-trial detainee, if so, his claims must be considered under the Due Process Clause of the Fourteenth Amendment as opposed to the Eighth Amendment, which is the applicable standard for incarcerated persons. Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005). As noted in Hubbard, the appropriate inquiry to use in a condition of confinement claim by a pre-trial detainee is "whether those conditions amount to punishment prior to an adjudication of guilt in accordance with law." Id.

**Emotional Injury**

Plaintiff generally contends that the alleged unconstitutional actions of Defendants caused him mental and emotional injury. See Doc. 1, p. 9. It is initially noted that 42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In Allah v. Al-Hafeez, 226 F.3d 247, 250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his or her constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm.

4

Under the standards announced in Allah and Section 1997e(e), since there has been no showing that Plaintiff suffered any physical injury, Pigford's civil rights claims which assert violation of his constitutional rights can proceed only to the extent that they seek non-compensatory damages. See Ostrander v. Horn, 145 F. Supp. 2d 614, 618 (M.D. Pa. 2001).

**Prison as Defendant**

One Defendant named in the Complaint is the Cumberland County Prison. It is well settled that a plaintiff, in order to state a viable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Courts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability. See Fischer v. Cahill, 474 F.2d 991, 992 (3d Cir. 1973); Philogene v. Adams County Prison, Civ. No. 97-0043, slip op. at p. 4 (M.D. Pa. Jan. 30, 1997) (Rambo, C.J.); Sponsler v. Berks County Prison, Civ. A. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. Feb. 28, 1995). Pursuant to the above standards, the Cumberland County Prison is clearly not a person and therefore not subject to civil rights liability. See Thompkins v. Doe, No. 99-3941, slip op. at 3 (3d Cir. March 16, 2000). Dismissal will be entered in favor of said Defendant.

**Grievance Procedure**

Also named as Defendants are Warden Reitz and Deputy Warden Ilgenfritz. Civil rights

claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim.  See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . .  [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Based upon a review of the Complaint, there is no assertion that either the Warden or Deputy Warden had any personal involvement or acquiescence with respect to any of the alleged falsified misconduct charges issued to Plaintiff, his temporary placement in disciplinary segregation, or the purported improper reading of his legal documents. Accordingly, any attempt by Pigford to establish liability against Defendants Reitz and Ilgenfritz solely based upon their supervisory capacities with respect to those alleged unconstitutional acts is subject to dismissal under Rode.

Second, inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.").  Consequently, any attempt by Plaintiff to

establish liability against Reitz and Ilgenfritz solely based upon the substance or lack of response to an institutional grievance does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

    Under the standards developed in Alexander, Plaintiff cannot obtain relief under § 1983 against either Warden Reitz or Deputy Warden Ilgenfritz solely based upon their responses or lack thereof to his institutional grievances. Pursuant to the above discussion, since the only claims asserted against those Defendants are based upon their alleged failure to take action in response to an administrative grievance filed by Pigford, Defendants Reitz and Ilgenfritz are also entitled to entry of dismissal.

**Access to the Courts**

Pigford claims that Defendants Wilson and Dunlap "unlawfully read my legal documents" on January 26, 2011. Doc. 1, at p. 14. Inmates have a constitutional right to meaningful access to law libraries, legal materials or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts.

Based upon a review of the Complaint, Plaintiff has not satisfied his burden under Lewis of establishing that he suffered any actual injury with respect to the alleged one time

7

unlawful reading of his personal legal property for several reasons. First, as noted above, the Complaint acknowledges that during the relevant time period, Pigford was represented by counsel. Furthermore, there are no contentions that the alleged reading of his personal legal property caused him to miss any court imposed deadline. More importantly, Plaintiff has failed to set forth a single specific instance showing how the alleged one time improper reading of his legal documents interfered with his ability to pursue any legal remedies. Accordingly, it is apparent to his Court that the Complaint fails to assert a viable denial of access to the courts claim.

**Negligence**

Plaintiff also generally alleges that the conduct attributed to the Defendants constituted neglect. See Doc. 1, p. 9. Assuming that Pigford is attempting to assert a claim of negligence, it is well-settled that claims that sound in negligence do not expose a defendant to liability under § 1983. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986). Simply put, allegations of negligence "do not trigger constitutional protections." Whooten v. Bussanich, 248 Fed. Appx. 324, 326 (3d Cir. 2007)(citing Estelle v. Gamble, 429 U.S. 97 (1976)). Thus, entry of dismissal will be granted to the extent that the Complaint is attempting to pursue a § 1983 negligence claim.

**Administrative Custody**

Plaintiff alleges that he was improperly placed in disciplinary confinement on administrative custody status by Defendant Wilson on the afternoon of January 2, 2011. According to the Complaint, he was released from administrative custody on January 4, 2011.

The Fourteenth Amendment prohibits the states from depriving "any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  A protected liberty interest may be created by either the Due Process Clause itself or by state law.  Id.  Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.  Conversely, there can be no due process violation where there is no protected liberty interest.

The United States Supreme Court in Sandin, shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner.  Id. at 481.  In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  Id. at 485.  Courts within this circuit, applying Sandin in various actions, have found no merit in due process claims presented regarding short term institutional disciplinary custody placement.  See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

Considering the rules of law set forth in Sandin and the subsequent line of decisions by the Third Circuit Court of Appeals, this Court finds that Plaintiff's action to the extent that

9

it alleges that he was improperly placed in segregation on administrative custody status for approximately two (2) days is meritless because the magnitude of his admittedly brief placement in administrative custody at the Cumberland County Prison did not implicate a protected liberty interest.

**False Misconduct Charges**

Next, Pigford asserts that he was subject to five (5) separate false misconduct charges. His Complaint vaguely indicates that those charges were issued in retaliation at the direction of Lieutenant Dunlap.[4] It is noted that Plaintiff acknowledges that he was found not guilty of all five (5) misconducts. A liberal reading of the Complaint also suggests that Plaintiff's previously discussed two (2) day administrative custody confinement was the result of retaliation by Defendants Wilson and Meluskey.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d

---

[4] The filing of a disciplinary charge, although not otherwise actionable under § 1983, is actionable if done in retaliation. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); see also Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989) (filing of false disciplinary charges is not a constitutional violation unless charges were filed in retaliation for the exercise of a constitutional right); Flanagan v. Shively, 783 F. Supp. 922, 931 (M.D. Pa. 1992) (McClure, J.).

10

at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)); Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005) (the mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events).[5]

Once Plaintiff has made a prima facie case, the burden shifts to defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted).  When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned.  Rauser, 241 F.3d at 334.

Plaintiff has clearly not demonstrated that he was engaged in a constitutionally protected activity or that his exercise of a constitutionally protected right was a substantial or motivating factor behind the alleged acts of retaliation as required by Rauser.  Although the Complaint indicates that Lieutenant Dunlap encouraged correctional officers to file misconducts against Pigford, there is no claim that Dunlap engaged in said action for the purpose of retaliating against the inmate for his exercise of a constitutionally protected right. Moreover, with respect to the alleged issuance of false misconduct charges, since Plaintiff acknowledges that he was found not guilty of all five (5) misconducts, there is also no indication that he suffered any adverse action as required by the second prong of Rauser.

Based upon those considerations , Plaintiff has not sufficiently alleged facts which

---

[5] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation.  Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

11

could support a claim of retaliation.[6]

**Visitation**

The Complaint also asserts a claim that Officer Wilson denied Plaintiff visitation with his girlfriend on January 2, 2011.

Neither convicted prisoners nor their family members have an inherent constitutional right to visits.  See Doe v. Sparks, 733 F. Supp. 227, 230 & n.3 (W.D. Pa. 1990); Buehl v. Lehman, 802 F. Supp. 1266, 1270 (E.D. Pa. 1992)(visitation is a privilege subject to the discretion of prison authorities).

Removal from society is a fundamental incident of imprisonment and where visitation is permitted, it is often narrowly circumscribed.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (denying prison visitation with mother characterized as well within ordinarily contemplated terms of imprisonment).

The United States Supreme Court has recognized that the Constitution does not require that inmates be allowed visits "when reasonable, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the institution." Block v. Rutherford, 468 U.S. 4576, 589 (1984).  More recently, the Supreme Court elaborated that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." Overton v. Bazzetta, 539 U.S. 126, 134 (2003).   The Court of Appeals for the Third Circuit has similarly concluded that a legitimate  prohibition on contact visits is acceptable even if it implicates a fundamental right, such as family relationships.  Inmates of Allegheny

---

[6] If Plaintiff can establish establish facts which would show that his placement in administrative custody was undertaken for his engagement in a constitutionally protected right, Plaintiff may file a reconsideration motion within fourteen (14) days of the date of this Memorandum.

County v. Pierce, 612 F.2d 754, 759 (3d Cir. 1979).

Based upon an application of the above standards, the alleged one time denial of visitation is not a condition of confinement so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life, as required to implicate the Eighth Amendment.  See Bazzetta v. McGinnis, 124 F.3d 774, 779 (6th Cir. 1997)(ban on contact visits "cannot be said to constitute cruel and unusual punishment.").  Likewise, given the totality and duration of Plaintiff's assertion even if he was a pretrial detainee and as such entitled to greater protection than that afforded to incarcerated persons under the Eighth Amendment, this Court is still satisfied that the Complaint has failed to set forth a claim of being subjected to a condition of confinement which was in violation of his Fourteenth Amendment rights

**Conclusion**

Since Plaintiff's complaint is "based on an indisputably meritless legal theory" it will be dismissed, without prejudice, as legally frivolous.  Wilson, 878 F.2d at 774.  An appropriate Order will enter.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

**DATED: APRIL 12, 2011**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LYNELL DAVON PIGFORD,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | **CIVIL NO. 3:11-CV-598** |
| : | |
| **CUMBERLAND COUNTY PRISON,** : | (Judge Munley) |
| **ET AL.,** : | |
| : | |
| **Defendants** : | |

## **ORDER**

**AND NOW**, to wit, this 12th day of April, 2011, for the reasons set forth in the foregoing Memorandum, it is hereby **ORDERED** that:

1. Pigford's complaint is **DISMISSED WITHOUT PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915 (e)(2)(B)(I).

2. The Clerk of Court is directed to **CLOSE** this case.

3. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

                                                  **BY THE COURT:**

                                                  **s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court**